UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

TAWANDA BROWN,

    Petitioner,

  v.                Case No. 11-C-0496

UNITED STATES OF AMERICA,

    Respondent.

ORDER DENYING TAWANDA BROWN'S MOTION UNDER 28 U.S.C. § 2255
AND DISMISSING CASE

  Tawanda Brown filed a § 2255 motion challenging her May 18, 2010, judgment of conviction following her guilty plea to maintaining a drug house in violation of 21 U.S.C. § 856(a)(2). Both the plea and sentencing hearings were adjourned to afford Brown additional time to evaluate her position. New counsel was appointed and the court sentenced Brown to 37 months imprisonment. She did not appeal her conviction.

  In her pending § 2255 motion, Brown argues that the government breached the plea agreement and that the court should not have considered the testimony of a confidential informant during sentencing because the informant was unreliable. She also argues that counsel was ineffective for 1) failing to argue for a minimal role reduction, 2) failing to make any argument relating to her lack of knowledge regarding Julius Arberry's drug dealing, 3) failing to make any argument regarding the confidential informant's reliability, 4) failing to file a motion regarding Arberry's attorney contacting her, 5) advising her to enter the plea, and 6) failing to seek withdrawal of her plea.

  Section 2255 allows a person convicted of a federal crime to seek to vacate, set aside, or correct his sentence. This relief is available only in limited circumstances, such

as where an error is of jurisdictional or constitutional magnitude, or where there has been an error of law that "constitutes a fundamental defect which results in a complete miscarriage of justice." *See Harris v. United States*, 366 F.3d 593, 594 (7th Cir.2004). Motions to vacate a conviction or correct a sentence ask a court to grant an extraordinary remedy to a person who has already had an opportunity of full process. *Kafo v. United States*, 467 F.3d 1063, 1068 (7th Cir. 2006).

A § 2255 is not a substitute for direct appeal. *Varela v. United States*, 481 F.3d 932, 935 (7th Cir. 2007). Claims not raised on direct appeal are barred from collateral review unless the petitioner can show good cause for failing to raise the issue earlier and actual prejudice based on the error alleged. *Galbraith v. United States*, 313 F.3d 1001, 1006 (7th Cir. 2002). The ineffective assistance of counsel may provide cause sufficient to excuse a procedural default, *see Murray v. Carrier*, 477 U.S. 478 (1986), and ineffective assistance claims may be raised for the first time under § 2255, *see Massaro v. United States*, 538 U.S. 500 (2003). However, because the court presumes that counsel is effective, a petitioner bears a heavy burden in making out a winning claim. *United States v. Farr*, 297 F.3d 651, 658 (7th Cir. 2002). The petitioner must show that her lawyer's performance was objectively deficient, and that this deficient performance so prejudiced her defense that she was deprived of a fair trial. *Shell v. United States*, 448 F.3d 951, 954 (7th Cir.2006).

Because Brown's claims regarding an alleged breach of a plea agreement and the testimony of the confidential informant were not raised on direct appeal, she cannot pursue these claims unless she can show cause and prejudice. Nothing in this record suggests that she can meet this burden. Even if an ineffective assistance claim excused the default, the claims would fail.

Regardless, with respect to the government's alleged breach, Brown asserts that the Assistant United States Attorney proposed probation but withdrew the offer when she learned that Brown was aware of Arberry's "activities." The record belies Brown's arguments. The court convened for the plea hearing June 29, 2009, at which time Brown admitted to marijuana use. The government advised that Brown tested positive for marijuana on May 14, 2009, May 21, 2009, and June 12, 2009, missed two screens, and submitted diluted urine screens. That same day, Brown tested presumptive positive for marijuana. Consequently, the court allowed Brown to remain on bond but ordered her to return to court on June 30, 2009.

During the plea hearing, Brown testified that she left court on June 29, 2009, and went home to drink four shots of vodka. (Plea Hearing Tr. at 8.) However, she had eaten and no difficulty understanding the discussion. She did not feel that she was under the influence of alcohol and the court found her competent to enter the plea. (*Id.* at 9, 25.) Significantly, the plea agreement signed by Brown on June 24, 2009, did not contain a provision that the government would recommend probation.

That the plea agreement contains no such recommendation is corroborated by the affidavit of Assistant United States Attorney Erica N. O'Neill. She avers that a revised plea tendered to Brown's counsel via e-mail contained an agreement that the government would recommend a sentence of probation, which could include a period of home confinement. (O'Neill Aff. at ¶ 7.) However, soon after e-mailing the agreement, the United States Probation Office informed O'Neill that Brown had tested positive for marijuana use. O'Neill contacted Brown's counsel and worked out a revised agreement which was signed by Brown and accepted by the court. In the signed agreement, the government stated that it

-3-

would recommend that relevant conduct was at least 100 grams but less than 200 grams of a mixture and substance containing cocaine, that the applicable base offense level was 18, and that the sentence should be no greater than the applicable sentencing guideline range as determine by the court. (Plea Agreement at ¶¶ 15, 16, and 20.) The proceedings that followed were consistent with these provisions. Hence, Brown cannot establish an alleged breach.

Similarly, Brown cannot prevail on an argument that the government failed to provide discovery until the plea hearing, and did not provide the names of informants or evidence to support the government's position that Brown knew the drugs and/or guns were in her home. The government acknowledged that it provided information to Brown's attorney in February 2009 shortly after the materials surfaced during the preparation for Arberry's trial. (O'Neil Aff. at ¶ 5.) That information was inculpatory. Neither the information provided to counsel nor the confidential informants were used to increase her offense level. Rather, as set forth in the plea agreement, the offense level was determined by the items seized from Brown's residence, including 125.8 grams of cocaine hydrochloride, 1.1 grams of cocaine base, 31.7 grams of marijuana. (PSR at ¶¶ 10, 18.) Consequently, Brown's claims have no merit.

Similarly, Brown cannot argue that the court should not have relied on information from the confidential informants at sentencing. The court considered the weight of the drugs found in Brown's home. Moreover, it took into account evidence that officers also seized from Brown's home drug paraphernalia, including a digital scale with drug residue, sandwich bags, a plate, razor blade, metal bowl, water pipe, and pipe. (PSR at ¶ 10; Sentencing Tr. at 5.) Eight fingerprints on these items belonged to Brown, including the

-4-

Case 2:11-cv-00496-CNC   Filed 06/17/13   Page 4 of 8   Document 6

digital scale, plate, and water pipe. (PSR at ¶ 11, Sentencing Tr. at 5.) Significantly, the court found Brown's testimony at sentencing to be untruthful and that the government had demonstrated by clear and convincing evidence that Brown should be attributed with the drugs described in the PSR and used in calculating her base offense level. (Sentencing Tr. at 37-38.) As the court explained:

> The court finds that the defendant in this case has not been truthful. What the defendant has testified to in this matter indicates to the court that she was living with this defendant, with Mr. Arberry, much of the time and was staying in a room that had a gun, scales with drug residue- cocaine and marijuana residue, a plate where drugs were clearly being cut; and she was using marijuana on a regular basis.
>
> Anyone who used marijuana as regularly as this defendant would not need to use a razor blade and a scale to prepare at blunt. There's nothing about this room and what I see in these pictures that indicates that the defendant is meticulous. The room is an absolute mess. Yet, in the use of marijuana, this defendant claims she was very precise.
>
> I note also that the furniture arrangement in this room is such that the bed and the night table are very close together so, too, the bed and the dresser where the drugs, where the gun and the scale were found. If there is a single light in that room, and this room was entered by Mr. Arberry after this defendant went to sleep, it is more likely that not that she would have been disturbed as he made his way to the bed or she knew what was going on when Mr. Arberry came in.
>
> If the gun was placed in that night stand, as depicted in the photo, it would appear to me that it was – it may have been placed in that night stand by the person on that side of the bed which probably would have been Mr. Arberry. I asked about whether or not Mr. Arberry was right-handed or left-handed because the way the gun is placed suggests that it was placed closest to the bed so that a right -handed person could reach it while on his stomach or while reaching across the night stand. I also note from the fact that the shoes were in the closet that they were likely there because they were placed there by someone who used the place regularly.
>
> I have no doubt in my mind that this defendant was participating in the cutting of drugs; and I note, too, that there are no objections to the paragraph which indicates at page four at the bottom of the page, it's paragraph 18, that

-5-

> people used drugs and she also assisted Mr. Arberry in cooking the cocaine and crack. There's no objection to that paragraph of that statement.
>
> Hence, it is the court's view that the comment by the defense regarding relevant conduct is not founded upon fact; and that the evidence offered by the government demonstrates certainly by clear and convincing evidence that this defendant should be attributed with the drugs as set forth in the presentence report.

(Sentencing Tr. at 37-38.) Because the court rejected Brown's testimony and held her responsible for the entire amount of drugs seized, she cannot argue that the court erred in sentencing. Put simply, Brown pled guilty, failed to appeal, and was held accountable for her untruthful testimony at sentencing.

As a final matter, Brown claims that her counsel was ineffective for 1) failing to argue for a minimal role reduction, 2) failing to make any argument relating to her lack of knowledge of Arberry's drug dealing, 3) failing to make any argument regarding the confidential informant's reliability, 4) failing to file a motion regarding Arberry's attorney contacting her, 5) advising her to enter the plea, and 6) failing to seek withdrawal of her plea. Finally, Brown claims that the court should not have considered the testimony of a confidential informant during sentencing because the informant was unreliable.

The record regarding these claims does not show that Brown was prejudiced. As discussed above, Brown herself testified that she was not aware of Arberry's drug dealing and that the facts established nothing more than possession of marijuana. Also, counsel filed a letter in response to the PSR arguing that Brown would be entitled to a reduction under § 3B1.2 and the December 22, 2009, addendum to the PSR summarizes Brown's argument that she was entitled to a two or four offense-level decrease because Arberry was the main player with respect to the cocaine found in her home. Additionally, during the

-6-

first sentencing hearing, counsel referenced his "overall objection" that Brown did not have knowledge of Arberry's crack cocaine testimony. (Sentencing Tr. at 44.)

Even if the court could find deficient performance by counsel, it remains that this court found Brown to be untruthful based upon her inconsistent statements and the evidence presented. Indeed, after hearing Brown testify, the court asked counsel whether Brown should receive points for obstruction under U.S.S.G. § 3C1.1 The court adjourned the sentencing hearing to allow the parties to supplement the record with regard to Brown's knowledge of drug activities in her home (Sentencing Tr. at 46), and Brown returned for sentencing with new counsel, accepted responsibility, and avoided obstruction of justice points. Therefore, the court imposed a sentence at the low end of the guideline range. On this record which included Brown's testimony, counsel would not have prevailed on any argument attacking the informants or seeking further sentencing guideline reductions.

Brown's final two arguments with respect to counsel are that Arberry's counsel contacted her directly and that counsel should have moved to withdraw the plea. No facts suggest that any alleged contact by Arberry's counsel resulted in any prejudice to Brown or otherwise affected her constitutional rights. If Brown believed she was contacted by Arberry's attorney improperly, she could have reported it to the Wisconsin Board of Bar Examiners and/or the court presiding over Arberry's case. However, it is apparent that she failed to do so. Finally, this court engaged Brown in an extensive colloquy and reviewed the photographs and reports of evidence found in her home (with her fingerprints). There were no bases for moving to withdraw the plea and certainly no bases on which the court would have granted such a motion. The drug paraphernalia, the quantity of the drugs,

-7-

Brown's fingerprints, and the court's findings with regard to Brown's testimony make it impossible for Brown to argue that the result would have been different but for the errors.

Now, therefore,

IT IS ORDERED that Brown's motion to vacate under § 2255 is denied.

IT IS FURTHER ORDERED that this case is dismissed.

Dated at Milwaukee, Wisconsin, this 17th day of June, 2013.

BY THE COURT

/s/ C. N. Clevert, Jr.
C.N. CLEVERT, JR.
U.S. DISTRICT JUDGE

-8-

Case 2:11-cv-00496-CNC   Filed 06/17/13   Page 8 of 8   Document 6